## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNIVERSAL CITY DEVELOPMENT
PARTNERS, LTD.,

Plaintiff,

-vs-                                              Case No.  6:04-cv-781-Orl-28JGG

RIDE & SHOW ENGINEERING, INC.,

Defendant.

---

## ORDER

This cause came on for oral argument on August 26, 2005, and September 21, 2005, on the

following motions:

| | |
|---|---|
| **MOTION:** | **DEFENDANT RIDE & SHOW ENGINEERING, INC.'S MOTION TO COMPEL PLAINTIFF UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. TO RETURN INADVERTENTLY PRODUCED PRIVILEGED MATERIALS (Doc. No. 95)** |
| **FILED:** | **July 11, 2005** |

**THEREON** it is **ORDERED** that the motion is **DENIED.**

| | |
|---|---|
| **MOTION:** | **SECOND MOTION TO COMPEL RETURN OF INADVERTENTLY PRODUCED PRIVILEGED DOCUMENTS BY RIDE & SHOW ENGINEERING, INC. (Doc. 147)** |
| **FILED:** | **September 19, 2005** |

**THEREON** it is **ORDERED** that the motion is **DENIED**.

Defendant Ride & Show Engineering, Inc. ("RSE") filed its first motion to compel Plaintiff Universal City Development Partners. Ltd. ("Universal") to return to RSE documents approximately 36 pages of documents that it claims are protected by the attorney-client privilege and/or the attorney work product privilege. RSE claims to have inadvertently produced the documents during discovery. RSE provided copies of the contested documents (Defendant's Hearing Exhibits 1 and 2) to the Court on August 26, 2005, for an *in camera* inspection pursuant to this Court's notice. Docket No. 136. RSE filed its second motion to compel on September 19, 2005,[1] and provided 145 additional documents[2] marked as Defendant's Exhibit 3 to the Court on September 21. 2005. for an *in camera* inspection.

## I.    THE LAW

### A.    The Attorney-Client Privilege

In federal question cases, privileges are determined under federal common law. Fed. R. Evid. 501. The attorney-client privilege is only available when all the elements are present. *Provenzano*

---

[1] Although RSE's Second Motion to Compel was not ripe as of the date of the hearing on September 21, 2005, Universal voiced no objection to its immediate resolution. and stated it was prepared to address the motion.

[2] Universal believes the number is closer to 160 documents, but the parties have not compared their groupings of documents to ascertain why they come to a different number.

*v. Singletary.* 3 F. Supp. 2d 1353, 1366 (M.D. Fla.1997), *aff'd*, 148 F.3d 1327 (11th Cir. 1998).  The elements of the attorney-client privilege are:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived.

*Id. (quoting Int'l Tel. & Tel. Corp. v. United Tel. Co..* 60 F.R.D. 177, 184-85 (M.D. Fla. 1973) (citations omitted).  The party asserting the privilege has the burden of proving the existence of the privilege.  *See United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991).

It is generally recognized that the communication of factual information is not protected by the attorney-client privilege.  For example, reports reflecting the status of litigation and containing purely factual information are not privileged.  *See Women's Interart Ctr., Inc. v. N.Y.C. Econ. Dev.,* 223 F.R.D. 156, 160 (S.D.N.Y. 2004) (status report with handwritten edit notes containing only factual background information were not protected).  Similarly, fee agreements or retainer agreements generally are not privileged.  *See, e.g., In re Semel,* 411 F.2d 195, 197 (3d Cir. 1969) ("In the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship.");  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Aetna Cas. & Surety Co.*, 384 F.2d 316, 317 n. 4 (D.C. Cir. 1967) (fact of attorney-client relationship and reason for its existence generally are not privileged);  *Finol v. Finol*, 869 So.2d 666 (Fla. Dist. Ct. App. 2004) (billing information that does not reveal mental impressions and opinions of counsel is not privileged);  *P. & B. Marina, Ltd. P'ship v. Logrande*. 136 F.R.D. 50, 55 (E.D.N.Y.1991) (request to pay fees and attached statement of fees was not privileged).

**B.     The Attorney Work Product Protection**

Protection for an attorney's work product was first recognized by the Supreme Court in

*Hickman v. Taylor*, 329 U.S. 495 (1947).   Rule 26(b)(3) of the Federal Rules of Civil Procedure

subsequently was added to clarify the extent to which trial preparation materials are discoverable in

federal courts.   Rule 26(b)(3) provides, in pertinent part:

> [A] party may obtain discovery of documents and tangible things
> otherwise discoverable . . . and prepared in anticipation of litigation or
> for trial by or for another party or by or for that other party's
> representative . . . only upon a showing that the party seeking discovery
> has substantial need of the materials in the preparation of his case and
> that he is unable without undue hardship to obtain the substantial
> equivalent of the materials by other means. In ordering discovery of
> such materials when the required showing has been made, the court
> shall protect against disclosure of the mental impressions, conclusions,
> opinions, or legal theories of an attorney or other representative of a
> party concerning the litigation.

Rule 26(b)(3) does not expressly address the temporal scope of the work-product immunity.   The

"literal language of the Rule," however, protects materials "prepared for *any* litigation or trial as long

as they were prepared by or for a party to the subsequent litigation."   *F.T.C. v. Grolier Inc.*,  462 U.S.

19, 25 (1983) (emphasis in original).

Although the United States Court of Appeals for the Eleventh Circuit has not addressed the

issue,[3] the Court finds that the above language from *Grolier* provides a strong basis to conclude that

---

[3] The Court finds *FDIC v. Cherry, Bekaert & Holland*, 131 F.R.D. 595 (M.D. Fla. 1990), cited by Universal to be unhelpful in resolving these facts. First, contrary to Universal's argument, the *Cherry* case did not expressly hold that the attorney work product will be recognized in subsequent litigation *only* if the issues are closely related. Rather, the court acknowledged the ruling in *In re Grand Jury Proceedings*, 73 F.R.D. 647 (M.D. Fla. 1977), which held that the work product doctrine did not protect documents that were not related to the first litigation, and the *Cherry* court found that the cases "involved at least some of the same issues" so as to satisfy the closely related test. *Id.* at 605. The concern addressed by the court in *In re Grand Jury* was the ability of the grand jury to perform its investigative functions and the need to vigorously protect and construe liberally the powers of a grand jury. 73 F.R.D. at 653. Given the focus of *In re Grand Jury*, its holding should be narrowly applied.

Rule 26(b)(3) applies to subsequent litigation. *See Frontier Ref. Inc. v. Gormann-Rupp Co.*, 136 F.3d 695, 703 (10th Cir. 1998); *In re Grand Jury Proceedings*, 43 F.3d 966, 971 (5th Cir. 1994) ("*Grolier* provides a strong hint that Rule 26 and *a fortiori, Hickman* (which is the genesis of Rule 26), applies to subsequent litigation"); *cf., Peterson v. BMI Refractories,* 124 F.3d 1386, 1392 n.4 (11th Cir. 1997) ("dicta from the Supreme Court is not something to be lightly cast aside"). There is a split among the circuits, however, as to whether the subsequent litigation must involve issues that are closely related to the case for which the documents were prepared initially, or whether the protection extends to all subsequent litigation. *See Frontier*, 136 F.3d at 703 (discussing split among the circuits).[4]  At least three circuits have declined to decide the issue, and analyze the privilege under both approaches. *Id.*[5]

## C.   Waiver of Privileges

To determine whether a privilege was waived, the parties agree that the multi-factor approach set forth in *Ray v. Cutter Labs., Div. of Miles, Inc.*, 746 F. Supp. 86 (M.D. Fla. 1990), is the correct approach. The Court, therefore, applies the following factors to determine whether waiver occurred: "(1) the reasonableness of precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Id.* at 88.

---

[4] At least one circuit, the Third, has suggested that the doctrine should only apply to closely related subsequent litigation, although it has declined to expressly so hold. See *In re Grand Jury Proceedings*, 604 F.2d 798, 803-04 (3d Cir.1979). At least two additional circuits, the Fourth and Eighth, extend the privilege to all subsequent litigation, related or not. See *United States v. Pfizer, Inc. (In re Murphy)*, 560 F.2d 326, 335 (8th Cir.1977); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 484-85 & n. 15 (4th Cir.1973).

[5] *See In re Grand Jury Proceedings*, 43 F.3d 966, 971 (5th Cir.1994) (explicitly recognizing two approaches and refusing to choose between the two); *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 660 (6th Cir.1976) (no discussion of issue in appeal where subsequent litigation is closely related to underlying litigation); *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 557 (2d Cir.1967) (same).

## II.   ANALYSIS

### A.   The King-Etscorn Communication

The first disputed document is a facsimile cover letter from Gerald King to James Etscorn.[6] At the time of the communication, King was outside counsel for RSE and Etscorn was representing RSE in connection with a different law suit between RSE and Universal ("the first Universal litigation"). The communication discloses King's mental impressions and strategies for handling the first Universal litigation. RSE argues that the communication is protected by both the attorney-client privilege and attorney work product privilege.

### 1.   Attorney-Client Privilege

Whether the King-Etscorn communication is protected by the attorney-client privilege turns on whether King was the client. An essential element of the attorney-client privilege requires a communication by the client. *Provenzano v. Singletary.* 3 F. Supp. 2d at 1366.

RSE alternately contends that King was general counsel and in-house counsel for RSE and, therefore, King meets the definition of a client. Universal contends that King only was outside counsel to RSE and does not qualify as a client.[7] Neither side cites supporting case law.

The Court finds that King was outside counsel to RSE and was not employed by RSE as an in-house counsel. There is nothing on the face of the document that suggests that King was

---

[6] Although RSE has submitted approximately 145 documents in addition to the King-Etscorn communication. the Court's analysis focuses on the King-Etscorn document because it was the only one of the group provided to the Court on August 26. 2005. The parties, however. agree that the additional documents are similar to the King-Etscorn communication. The Court finds that individual review of the additional 145 documents is unnecessary because. as subsequently explained, any existing privilege has been waived.

[7] King stated under oath that he was a sole practitioner who would represent RSE on occasion when called upon. and he denied being in-house counsel to RSE. King Deposition. Docket 107-2 at 28-31.

communicating confidential information from the client. RSE does not argue that King was acting as a conduit to transmit confidential client communications to Etscorn. Instead, the communication was between two outside attorneys regarding litigation strategy to employ on the client's behalf. This communication is not protected by the attorney-client privilege because it involved no confidential client communication.

### 2.    Attorney Work Product

Universal admits the document was attorney work product in the first Universal litigation. It argues, however, that the protection of the attorney work product doctrine does not extend to this subsequent litigation because the issues in the two law suits are different. The Court finds it unnecessary to choose between the alternate theories regarding the temporal scope of the attorney work product privilege because the document at issue satisfies both theories.

Universal argues that the issues are different because the first Universal litigation involved RSE's failure to perform under a contract, whereas this case involves ownership of patent and data rights. Despite the alleged difference in issues, Universal admits that it has conducted discovery in *this* case regarding liability and settlement of the first Universal litigation. Given Rule 26's restrictions regarding the scope of discovery, it is apparent that the issues in this case are intertwined with the issues in the first Universal litigation. The two cases are sufficiently related to justify the extension of the attorney work product privilege from the first Universal litigation to this case.

-7-

### 3.    Waiver of Privilege

Having determined that the document is protected attorney work product, the next issue is whether that protection has been waived.  In analyzing the waiver issue, the Court applies the multi-factor approach set forth in *Ray v. Cutter Labs., Div. of Miles. Inc.*, 746 F. Supp. 86 (M.D. Fla. 1990).

The first factor to consider is the reasonableness of precautions taken to prevent inadvertent disclosure.  Universal propounded its request for production of documents in December 2004.  RSE's written response was timely served on January 24, 2005. and raised the attorney-client and attorney work product objections, but RSE did not provide a privilege log or even generally describe the documents to which it asserted a privilege.  The parties had no agreement as to the date by which the privilege log was to be produced, and RSE did not produce the privilege log listing the contested documents until September 14, 2005 – nine months after the request for production.

On April 15, 2005,[8] RSE produced about 13,000 pages of documents to Universal.  RSE's counsel had approximately three and one-half months following service of the request for production to review the documents for privilege before producing them.  Nevertheless, RSE's counsel reviewed all 13,000 pages in a single evening, by himself, after flying cross-country from Buffalo back to Los Angeles.

The second factor is the amount of time taken to rectify the error.  On April 17, 2005, Universal informed RSE's counsel that "all of the documents appear to be archived copies from . . . litigation counsel to Ride & Show in the insurance litigation."  Bjorgum Declaration, Ex. E, Docket

---

[8] At the hearing on September 21, 2005, RSE stated it produced the documents on April 15. 2005.  Based on Universal's response to the motion, however, it appears the correct date was April 17. 2005.  Bjorgum Declaration, Ex. E, Docket 107-2 at 24.

107-2 at 24.  Universal's letter did not expressly inform RSE that privileged documents had been produced.  Counsel for RSE did not comprehend that privileged documents may have been produced, and did nothing in response.

On May 26, 2005, the parties met to mediate their claims.  Universal used the King-Etscorn communication.  Upon seeing the document, RSE immediately asserted that the document was privileged and requested its return.  RSE reiterated its demand the following day in writing. Shenkman Declaration, Ex. 1, Docket 97 at 5.  Despite having learned of one specific privileged document that had been produced from the attorney's litigation file, RSE still did not review the production to determine whether other privileged documents had been produced.  RSE first realized the magnitude of its disclosure when Universal filed its response to the motion to compel on July 25, 2005 – three months after the April 15, 2005, disclosure.

The third and fourth factors to consider are the scope of the discovery and the extent of the disclosure.  RSE contends that it has produced approximately 77,000 documents in this litigation. The facts are that RSE previously produced 60,000 documents in a different law suit, of whom one of the parties was loosely affiliated with Universal.  In mid-February, RSE agreed to make those documents available to Universal in this case.  RSE's counsel stated that it was unnecessary to conduct a privilege review because that he had already performed that work in the other litigation.  Instead, RSE's review was limited to ensuring that the documents were relevant to this litigation, a task that took approximately four hours.  As previously stated, the 145 documents that RSE contends are privileged and seeks to be returned were part of the April 15, 2005, document production numbering 13,000 pages.  The 145 documents appear within the first 3,500 pages of the 13,000 pages produced.

The final factor to consider is the overriding issue of fairness.  RSE argues there was no express waiver of privilege and that its attorneys' actions did not rise to the level of completely failing to consider privilege.  RSE also argues that Universal failed to comply with its ethical obligations to expressly inform RSE about the production of documents that are privileged on their face.  Universal counters by stating that the disclosure of privileged documents was so wide-spread, that it believed the disclosure was intentional.[9]  Universal further argues that RSE's counsel was so negligent in its failure to protect the privilege that fairness mandates that the Court not look the other way.

Weighing all of the factors, the Court finds that RSE has waived the attorney-client privilege and attorney work product protection for the produced documents.  Initially, RSE's general objection contained in its written response was ineffective to preserve the privileges.  Rule 34(b) of the Federal Rules of Civil Procedure requires the party upon whom the request was served to "serve and written response within 30 days after the service of the request" and, if a party objects to a document request, "the reasons for objection shall be stated."  Rule 26(b)(5) more specifically provides:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things

---

[9] RSE relies on ABA Comm. on Prof'l Ethics and Grievances, Formal Op. 92-368 (1994), which states, "A lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them." Local Rule 2.04(d) provides that the professional conduct of all members of the bar of this Court are governed by the Model Rules of Professional Conduct of the American Bar Association as modified and adopted by the Supreme Court of Florida. The Florida Bar has issued an opinion similar to that of the ABA, and states, "The Committee is of the opinion that an attorney, upon realizing or reasonably believing that he or she has received a document or documents that were inadvertently misdelivered, is ethically obligated to promptly notify the sender of the attorney's receipt of the documents. It is then up to the sender to take any further action." Fla. State Bar Comm. on Prof'l Ethics, Op. No. 93-3 (Feb. 1, 1994). It is clear that the receiving attorney's obligation to notify opposing counsel turns on whether the disclosure of privileged materials was clearly unintended. Based on the facts of this case, the Court finds that Universal had reasonable grounds to believe RSE's disclosures were intentional and Universal's counsel did not act unethically in failing to advise RSE specifically that RSE had turned over privileged documents.

not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Many courts interpreting these rules have found a blanket claim of privilege to be insufficient, and that a log or index of materials withheld under claim of privilege must be produced. *See, e.g., Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 664 (S.D. Ind. 1991) (requiring the log to list, for each separate document, the authors and their capacities, the recipients (including copy recipients) and their capacities, the subject matter of the document, the purpose for its production, and a detailed, specific explanation of why the document is privileged or immune from discovery); *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 641-642 (S.D.N.Y. 1991) (index including date, addressor, addressee, document type, and grounds for nondisclosure found insufficient). Blanket and general objections do not provide sufficient detail about the documents in this case to enable Universal to determine whether the withheld documents were privileged, and RSE was obligated to provide a privilege log or a more detailed response to the request for production to satisfy Rule 26 and 34's requirements.

RSE ultimately produced a privilege log on September 14, 2005, nearly eight months after the written response was due. The Eleventh Circuit has never determined what constitutes a timely production of a privilege log in response to a request for production of documents. A survey of district court discovery rulings reveals wide divergence on whether the privilege log must be produced at the time that the written response is due pursuant to Rule 34 to preserve the privilege. The only United States Court of Appeals to explicitly construe the relationship between Rule 26(b)(5) and Rule 34 is

-11-

the Ninth Circuit in *Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court for the Dist. of Montana*, 408 F.3d 1142 (9th Cir. 2005).

The Ninth Circuit rejected a *per se* rule that the failure to produce a privilege log within Rule 34's 30-day time limit results in waiver of the privilege. *Id.* at 1149. Instead, the Ninth Circuit enumerated several factors that should be applied "in the context of a holistic reasonableness analysis," and there should not be a mechanistic determination of whether information is provided in a particular format. *Id.* The Ninth Circuit held that:

> [U]sing the 30-day period as a default guideline, a district court should make a case-by-case determination, taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld docum ents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

*Id.* The Court adopts the Ninth Circuit's thoughtful analysis of the issue.

The Court already analyzed the assertion of a general objection in this case and found that it did not enable Universal to evaluate the asserted privilege. While review and production of 13,000 pages of documents is no small task, it is manageable. There is nothing in the record to suggest any particular circumstances that would make the preparation of the log unusually difficult. If RSE believed it would require more than 30 days to prepare a privilege log, it should have obtained an extension of time from Universal or filed a motion for protective order. RSE took neither action.

-12-

Finally, RSE did not produce a privilege log until September 14, 2005. Despite being produced more than eight months after the responses were due pursuant to Rule 34, and nearly three and one-half months after RSE learned that at least one privileged document had been disclosed, the log fails to identify the capacity of many recipients and does not provide sufficient information to assess the claim of privilege.[10] The Court, therefore, finds that RSE waived its privilege for the inadvertently disclosed documents by failing to timely and adequately make its objections. *See id.* (in the absence of mitigating factors, production of a privilege log five months after the Rule 34 time limit supports a finding that the privilege was waived). The Court's decision also is buttressed by RSE's failure to take adequate precautions to avoid production of the privileged documents when it failed to take the time and care necessary to conduct its privilege review. For these reasons, RSE's motions to compel Universal to return the King-Etscorn document and the other documents produced on or about April 15, 2005, is denied.

**B.    Christie Parker & Hale LLP Documents**

The second dispute centers on documents produced by the law firm, Christie Parker & Hale LLP ("CPH"), in response to Universal's third party subpoena. On May 4, 2005, Universal subpoenaed from CPH "all files, documents and materials relating to the patent prosecution." Bjorgum Declaration, Ex. H, Docket 107-2 at 16. The subpoena called for compliance on May 18, 2005. An amended subpoena demanding the same documents was served on May 6, 2005, calling for compliance on May 10, 2005. Bjorgum Declaration, Ex. I, Docket 107-2 at 19. CPH met neither

---

[10] One example of this is a letter from Joseph McHugh, Esq. of RSE to Kimio Haneda of Sazale Corp. There is no explanation of how McHugh, apparently in-house counsel to RSE, could have an attorney-client relationship with an apparent third party. RSE Privilege Log, Docket 150-3 at 1.

deadline. Bjorgum Declaration, ¶11, Docket 107-2.  On May 19, 2005, Universal received a box of approximately 1,555 pages of documents numbered "CPH." Universal assumed the documents were responsive to its subpoena, although the documents were unaccompanied by a cover letter, objections or privilege log. Bjorgum Declaration, ¶12, Docket 107-2.

RSE moves to compel the return of approximately 35 pages of the CPH production on the grounds that the documents are protected by the attorney-client privilege.  The documents at issue are various letters between Felix Fischer, an attorney representing RSE, and RSE employees.

### 1.    Attorney-Client Privilege

RSE contends the communications between Fischer and RSE employees are protected because they reflect Fischer's guidance and instructions to RSE in connection with filing a patent application. Universal contends the documents are merely transmittals of draft patent claims, along with Fischer's characterizations of those claims.  Universal argues that the duty of candor to the USPTO renders communications incidental to the filing of a patent application outside the attorney-client privilege.

The authorities upon which Universal relies, including *McNeil-PPC. Inc. v. Proctor & Gamble Co*, 136 F.R.D. 666 (D. Colo. 1991), have been rejected.  *See Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372, 374-75 (N.D. Cal. 1992) (collecting cases).  The Court finds no support for Universal's argument that this Court should create a *per se* exception to the attorney-client privilege because of the duty of candor to the USPTO.  The analysis of attorney-client privilege is no different in patent representation matters than in other types of representations.  *See In re Spaulding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000); *Automed Tech., Inc. v. Knapp Logistics & Automation, Inc.*, – F. Supp. 2d –, No. 104cv1152WSD, 2005 WL 1981122 (N.D. Ga. Aug. 1,

2005); *cf.. Advanced Cardiovascular Sys.*, 144 F.R.D. at 375-378 (discussing the legal nature of services rendered by an attorney representing a patent applicant).

Many of the challenged documents are nothing more than factual reports of filings made with the patent office and requests for payment of the retainer. These are not confidential communications and are not protected by the attorney-client privilege. Other documents, however, reveal specific legal strategies or advice given by the attorney to his client. The Court finds that the following documents are privileged: CPH000341; CPH000346; CPH000352-53; CPH000365; CPH000367-68; CPH000369; and CPH001093.

### 2.    Waiver of Privilege

Having determined that some of the documents are protected by the attorney-client privilege, the Court again analyzes the waiver issue using the multi-factor approach set forth in *Ray*. The first element to address are the precautions taken to prevent disclosure of privileged materials.

Counsel for RSE also served as counsel to CPH in connection with Universal's subpoena. Bjorgum Declaration, ¶ 13, Docket 107-2 at 6. Despite service of the subpoena on CPH on May 4, 2005, neither RSE nor CPH objected to the production of privileged materials prior to the production on May 19, 2005. RSE's counsel was responsible for the producing the documents. After reviewing the documents for privilege, counsel placed "colored sticky tabs" on the privileged documents. All of the documents were then given to an outside copying service, which RSE's counsel verbally instructed not to copy the tabbed documents and to deliver the copies directly to Universal's counsel upon completion. There was no agreement with the copying service regarding confidentiality of documents given to it for copying. RSE's counsel did not obtain a copy of what the copying service

had produced, but the copying service numbered RSE's original documents for the production and returned the original documents to RSE's counsel. RSE's counsel did not review the returned documents to determine whether the copying service had followed his directions.

On May 24, 2005, Universal's counsel sent a letter to RSE's counsel informing RSE that no objections or privilege log had been received and asked RSE to "confirm that you withheld no documents for privilege or other reasons." Bjorgum Declaration, Ex. J, Docket 107-3 at 22. RSE did not respond. Bjorgum Declaration, ¶ 14, Docket 107-2 at 6. On June 7, 2005, Universal inquired regarding whether an attachment to one of the produced documents had been withheld. Shenkman Declaration, Ex. 5, Docket 97 at 13. RSE responded on June 8, 2005, asserting that the document referenced in Universal's June 7 letter was "privileged" and was inadvertently produced. Shenkman Declaration, Ex. 6, Docket 97 at 15. RSE did not specify which privilege it was asserting, but demanded the return of the document, as well as other documents totaling 38 pages. Shenkman Declaration, Ex. 5, Docket 97 at 13. On June 13, 2005, RSE produced a privilege log for the CPH documents. Bjorgum Declaration, ¶ 19, Docket 107-2 at 7.

Weighing all of the factors, the Court finds that RSE has waived the attorney-client privilege for the produced documents. First, RSE and CPH failed to make a timely objection to the subpoena. Although the Eleventh Circuit has not addressed the issue of waiver of privileges for documents subpoenaed pursuant to Rule 45, the rules itself requires both that an objection be made to the subpoena and the claim of privilege must be stated within 14 days of service of the subpoena. Fed. R. Civ. P. 45(c)(2)(B). *See also Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C. Cir. 1996). Failure to serve written objection to a subpoena within the time specified by Fed. R. Civ. P. 45 typically waives any

objections the party may have. *Am. Elec. Power Co., Inc. v. U.S.*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (*citing Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996); *Angell v. Shawmut Bank Connecticut Nat'l Assoc.*, 153 F.R.D. 585, 590 (M.D.N.C.1994).

Not only must a party timely object under Rule 45(c)(2)(B), but the party must also prepare a privilege log in accordance with Fed. R. Civ. P. 45(d)(2). Rule 45(d)(2) provides:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials. the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Although Rule 45(d)(2) does not contain a specific time limit within which objecting parties must supply the requisite privilege log, the Advisory Committee Notes indicate that the purpose of the Rule "is to provide a party whose discovery is constrained by a claim of privilege . . . with information sufficient to evaluate such a claim and to resist if it seems unjustified."

Although the D.C. Circuit has stated that "[c]ommon sense and the purpose of the rule dictate that the 'subject to' language of Rule 45(c)(2)(B) does not mandate that the full description required by Rule 45(d)(2) be provided at the time the initial objection is asserted," this Court rejects the D.C. Circuit's suggestion that the log is timely so long as it is produced within a "reasonable time." *Tuite*, 93 F.3d at 1416. Use of a "reasonable time" standard is too amorphous to provide practical guidance to litigants and exposes parties to greater chance of inadvertently waiving privileges.

Because the purpose of Rule 45(d)(2) is the same as Rule 26(b)(5), the Court adopts the test articulated by the 9th Circuit in *Burlington Northern* for assessing timeliness of a privilege log. Therefore, the Court uses the 14-day objection period as a default guideline and make a case-by-case

determination, taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard. Nothing in this opinion is intended to interfere with the parties' ability to agree or stipulate to a different time for the production of privilege logs as permitted in the Case Management and Scheduling Order.

Given the state of the law at the time this motion was filed, RSE's production of the CPH privilege log on June 13, 2005, 40 days after service of the subpoena on May 4, 2005, was not unreasonable. The privilege log that was produced, however, does not sufficiently describe the documents withheld to enable the Court to assess the privilege claim.

The most serious failure to protect the privilege, however, arises from RSE's knowing and voluntary release of privileged documents to a third party – the copying service – with whom it had no confidentiality agreement. Having taken the time to review the documents and tab them for privilege, RSE's counsel should have simply pulled the documents out before turning them over to the copying service. RSE also failed to protect its privilege by promptly reviewing the work performed by the outside copying service.

For these reasons, RSE's motions to compel Universal to return the CPH documents produced on or about May 19, 2005, are denied.

## CONCLUSION

The Court finds that RSE has waived the attorney-client privilege and attorney work product protection for documents inadvertently produced, and its motions to compel Universal to return those documents are denied.

**DONE** and **ORDERED** in Orlando, Florida on September 23, 2005.

James G. Glazebrook
United States Magistrate Judge