### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**UNIVERSAL CITY DEVELOPMENT
PARTNERS, LTD.,**

                      **Plaintiff,**

**-vs-**                                        **Case No.  6:04-cv-781-Orl-28JGG**

**RIDE & SHOW ENGINEERING, INC.,**

                      **Defendant.**

_____

## ORDER

The dispute in this case surrounds the ownership, validity, and alleged infringement of Patent No. 5,527,221 ("the '221 Patent"). The patentee of the '221 Patent is Defendant Ride & Show Engineering, Inc. ("RSE"). Plaintiff Universal City Development Partners, Inc. ("UCDP") alleges, however, that it is the rightful owner of the patent based on prior contracts between RSE and UCDP's predecessor, Universal City Florida Partners,[1] which obligated RSE to assign to UCDP the rights of any inventions RSE conceived during the manufacture and service of two UCDP amusement park rides, "Earthquake-The Big One" ("Earthquake") and "Jaws."[2] On the basis of this allegation, UCDP brought the following claims against RSE: (1) a request for declaratory judgment that UCDP is the rightful owner of the '221

---

[1] As the successor to Universal City Florida Partners, UCDP will hereinafter be used to refer to both UCDP and UCFP.

[2] UCDP's assertion of ownership assumes the validity of the '221 Patent. However, in the first count of its Complaint as well as in its defense to RSE's patent infringement claim, UCDP also alleges that the '221 Patent is invalid.

Patent; (2) a breach of contract claim based on RSE's failure to notify UCDP of the '221 invention, which UCDP claims RSE conceived during its work on the Jaws and Earthquake rides; (3) a conversion claim based on RSE's alleged conversion of the '221 Patent; (4) an unjust enrichment claim based on RSE's alleged misappropriation and use of the '221 Patent; (5) a claim for constructive trust based on RSE's retention of benefits that RSE allegedly acquired through the wrongful use of the '221 Patent; and (6) a fraud claim based on RSE's alleged failure to perform on promises contained in the Jaws and Earthquake contracts.

This cause is before the Court on RSE's Motion for Summary Judgment (Doc. 83). In a prior Order (Doc. 231), the Court reviewed RSE's motion and determined that the threshold issue concerning the viability of UCDP's claims is whether they are barred by a release contained in a settlement agreement that the UCDP and RSE entered into in 1991. The release states that RSE is released from "any claim [UCDP] may have or hereafter may have . . . on account of or in any way arising out of, connected with or relating to the [Jaws and Earthquake contracts]."  Decl. of Kevin Shenkman, Doc. 114, Ex. 1, at BH400170.  In addition to identifying the effect of the release as a potentially dispositive issue, the Court also determined that, under Florida law, the release, like any contract, should be effectuated in accordance with its plain and unambiguous terms, so long as doing so would not offend a clear and well-defined public policy sufficiently important to abrogate the fundamental right of parties to freely enter into contracts under terms of their own choosing.  Doc. 231 at 15-22.  Taking this fundamental principle of contract interpretation as its guide, the Court then proceeded to find that the release clearly and unambiguously referred to the release of

claims which accrued both before and after the release was executed and which arose from or relate to the Jaws and Earthquake contracts.  Id. at 16-17.  The Court concluded its analysis of the release by finding that UCDP's claims in this case plainly arise from and relate to the Jaws and Earthquake contracts.  In light of these findings, the fate of UCDP's claims hinged on the answer to the following question: "Does Florida have a clear and well-defined public policy against anticipatory releases which is sufficiently important to abrogate the right of freedom of contract?"  Id. at  27.

The parties addressed this question during a hearing held on March 17, 2006.  While RSE asserted that there is no policy which prevents parties from freely entering into anticipatory release agreements, UCDP argued that anticipatory releases are, to one degree or another, prohibited by three different policies: (1) a policy in favor of recognizing the legitimate expectations of contracting parties; (2) a policy in favor of clearly identifying the owners of intellectual property; and (3) a policy against the anticipatory release of intentional tort claims.  After careful consideration of UCDP's arguments, the Court finds that there is no clear and well-defined policy against anticipatory releases such as the release at issue in this case.

### A.  Recognizing the Legitimate Expectations of Contracting Parties

UCDP is right to point out that Florida has a public policy in favor of recognizing the legitimate expectations of contracting parties.  See, e.g., Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co., 761 So. 2d 306, 311-12 (Fla. 2000).  Indeed, that is precisely the policy

the Court relied upon when it determined that effect should be given to the clear and unambiguous language of UCDP and RSE's release.

UCDP's purpose in invoking the policy, while not entirely clear, is presumably to call the Court's attention, once again, to the affidavit of Ronald Sikes ("Sikes"), the attorney who served as UCDP's counsel during the negotiation of the release agreement. Sikes Aff., Doc. 119, Ex. 4. In his affidavit, Sikes testifies, more than fourteen years after the fact, that UCDP's intent in entering into the release agreement was only to release RSE from claims accruing as of the time the release agreement was executed. Id. at 8-11. Yet, as UCDP concedes, evidence of what UCDP intended would only be relevant if the Court determined that the language of the release was ambiguous. Given that the Court has already found that the language of the release clearly and unambiguously refers to the release of claims accruing both before and after execution of the release, there is no cause to consider Sikes's testimony.[3] Hurt v. Leatherby Ins. Co., 380 So. 2d 432, 433 (Fla. 1980); Patco Transp., Inc.

---

[3] UCDP attempts to circumvent the parol evidence rule by contending that there was a latent ambiguity in the release agreement arising from a possible split in Florida case law on the question of whether parties could enter into anticipatory releases. This argument is unavailing. First, UCDP fails to cite any cases for the proposition that conflicting legal authority can provide the basis for a finding of latent ambiguity. Furthermore, there is nothing ambiguous about the basic principle, set forth more than ten years prior to the execution of UCDP and RSE's release agreement, that: "As with contracts generally, the language used in the release is the best evidence of the parties' intent [and that when] that language is clear and unambiguous, the courts cannot indulge in construction or interpretation of its plain meaning." Hurt v. Leatherby Ins. Co., 380 So. 2d 432, 433 (Fla. 1980). The clarity of this principle was hardly diminished by the observations of two district courts of appeal on how courts *ordinarily regard* general releases. See Doc. 231 at 18-21. Finally, even if conflicting authority could as a general matter create latent ambiguity in a contract, it would be far too much of a stretch to find that conflicting authority on the allowable breadth of release agreements somehow led a party as sophisticated as UCDP to draft a release agreement releasing *any claim it might have thereafter* when all it intended

v. Esupinan, No. 1D105-0483, 2005 Fla. App. LEXIS 19675, at *3 (Fla. 1st DCA Dec. 14, 2005).   As the Court previously determined, the policy of protecting the legitimate expectations of contracting parties–or what might otherwise be termed as "the fundamental policy of the right to freedom of contract between parties sui juris"[4]–plainly weighs in favor of effectuating the plain and unambiguous language of UCDP and RSE's release agreement.[5]

### B. Clearly Identifying Owners of Intellectual Property

UCDP argues that the public has an interest in knowing who owns the rights to intellectual property and, if UCDP cannot bring its request for a declaratory judgment that it, not RSE, owns the '221 Patent, that interest would be violated.  To bar UCDP from pursuing affirmative claims based on its asserted ownership of the '221 Patent is not, of course, the same as precluding judicial clarification of who owns the '221 Patent.  UCDP can assert, and

to release were claims it could have brought at that time.  Regardless of what case law may have had to say about the suitability of anticipatory releases, if UCDP truly intended to limit the release to presently existing claims, it could have easily done so by omitting the future-oriented language in its release agreement with RSE.

[4] Mazzoni Farms, 761 So. 2d at 312.

[5] During oral argument, UCDP again placed much emphasis on the nomenclature to assign to its release agreement with RSE.  UCDP initially reiterated its argument that the release was only a "general release," then argued that, if the release is instead an "exculpatory clause," the exculpatory language must be clear and unequivocal.  UCDP's argument missed the point.  What matters is not what to call the release agreement, but what the release agreement says.  Whether one chooses to call the agreement a general release, an anticipatory release, an exculpatory clause, or something else, the fact remains that the agreement refers to the release of claims accruing after the release's execution.  See Doc. 231, at 17-22.  Moreover, to the extent that there is a requirement that anticipatory releases (or exculpatory clauses) clearly and unequivocally release claims, the Court finds that the requirement has been met.

indeed has asserted, ownership as a defense to RSE's counterclaim of patent infringement. Still, UCDP contends that, if it were barred from pursuing its request for a declaratory judgment but prevailed on its ownership defense, the following result would ensue:

> [N]either [UCDP] nor [RSE] would have the legal right to license [the '221 Patent] or otherwise [be able to] exploit the invention as contemplated by the patent laws . . . . Third parties interested in the patent [or] possibly interested in obtaining licenses [for] the patent, [would] have to guess as to . . . the true owner [of the patent and] whether the named owner [of the patent] really owns it . . . .  Neither [UCDP or RSE could]  exploit or license [the] patent.

Tr. of Oral Argument, Doc. _____, at _____.

While UCDP has identified a potential problem worthy of avoidance, the range of solutions is not restricted to allowing UCDP to seek a declaratory judgment that it owns the '221 Patent.  Necessarily subsumed within UCDP's claim that is the rightful owner of the '221 Patent is the claim that RSE is *not* the rightful owner of the '221 Patent.  In other words, UCDP's request for declaratory relief is, in essence, two claims in one.  As such, barring UCDP from requesting a declaratory judgment that it owns the '221 Patent need not mean that UCDP is also precluded from seeking a declaratory judgment that RSE is not the rightful owner of the patent.

The only question is whether such a claim is barred by UCDP and RSE's release agreement.  It is not.  Much like UCDP's requests for a declaratory judgment that it did not infringe the '221 Patent or, alternatively, that the '221 Patent is invalid, a request for a judgment that RSE is not the owner of the '221 Patent would not run afoul of UCDP's release agreement with RSE.  It is a claim that arises not from the Jaws and Earthquake contracts,

but from the obviously very real threat that RSE would sue UCDP for patent infringement.

By allowing a request for a declaratory judgment that RSE does not own the '221 Patent, any potential confusion that might otherwise arise if UCDP were entirely barred from pursuing declaratory relief on the issue of ownership is obviated.  While neither UCDP nor RSE would be able to exploit the '221 Patent, this would be no different than if RSE never obtained the '221 Patent in the first place.  According to UCDP, the first time it learned of the technology underlying the '221 Patent was a little more than two years ago when RSE sued UCDP for patent infringement in the Central District of California–that is, long after UCDP could have obtained a patent for the technology in its own name.  Thus, any harm that would arise from a scenario in which neither RSE nor UCDP could license or otherwise exploit the '221 Patent would run to UCDP, not the public.  As far as the technology underlying the '221 Patent is concerned, the public would be free to use it, as neither UCDP nor RSE would enjoy a monopoly over its use.  For these reasons, UCDP is barred from bringing its claim for declaratory relief on the issue of ownership, but only to the extent that the claim seeks a declaration that UCDP owns the '221 Patent.  UCDP may, however, pursue a declaration that RSE does not own the '221 Patent.

### C.  The Anticipatory Release of Intentional Torts

UCDP asserts that the law in Florida has been "crystal clear" since the 1940s that parties cannot contract to anticipatorily release intentional tort claims.  However, the cases that UCDP cites in support of its assertion–Oceanic Villas v. Godson, 4 So. 2d 689 (1941),

and <u>Mankap Enterprises v. Wells Fargo Alarm Services</u>, 427 So. 2d 332 (3d DCA 1983)–merely announce a public policy against release clauses which endeavor to release parties from claims for fraudulently inducing others into the very contracts in which the release clauses are contained. <u>Oceanic Villas</u>, 4 So. 2d at 5 ("To hold that by the terms of the contract which is alleged to have been procured by fraud, the lessor could bind the lessee in such manner that lessee would be bound by the fraud of the lessor would be against the fundamental principles of law, equity, good morals, public policy and fair dealing. *It is well settled that a party can not contract against liability for his own fraud.*") (emphasis added); <u>Mankap</u>, 427 So. 2d at 333 (holding that defendant could not release itself from liability for "intentional misrepresentation as to a particular feature of capability of [an alarm] system"). As UCDP does not contend that RSE fraudulently induced it into signing their release agreement, the policy against fraudulent inducement set forth in <u>Oceanic Villas</u> and <u>Mankap</u> simply has no bearing on whether to effectuate the clear and unambiguous terms of UCDP and RSE's release agreement.

### III.  CONCLUSION

Absent the identification of any clear and well-defined policy against anticipatory releases, much less one sufficiently important to abrogate the fundamental policy of the right to freedom of contract, the Court has no choice but to effectuate the plain and unambiguous terms of UCDP and RSE's release agreement.[6] <u>Accord</u> <u>Mazzoni Farms, Inc. v. E.I. DuPont</u>

---

[6] In reaching this determination, the Court is mindful of the following admonition from the Eleventh Circuit:

de Nemours & Co., 761 So. 2d 306, 311-12 (Fla. 2000) ("Courts . . . should [proceed with]

extreme caution when called upon to declare transactions as contrary to public policy and

should refuse to strike down contracts involving private relationships on this ground, unless

it is made clearly to appear that there has been some great prejudice to the dominant public

interest sufficient to overthrow the fundamental policy of the right to freedom of contract

between parties sui juris.").  Accordingly, RSE's motion for summary judgment (Doc. 83) is

**GRANTED** as to Counts II through VI of UCDP's complaint and as to Count I to the extent

that count seeks a declaration that UCDP is the rightful owner of the '221 Patent.[7]  The

motion is otherwise **DENIED** as to Count I of UCDP's complaint.

     **DONE** and **ORDERED** in Chambers, Orlando, Florida this 30th day of March,

2006.

 

JOHN ANTOON II
United States District Judge

---

     [F]ederalism proscribes unwarranted federal judicial meddling in state matters because interference would prevent the informed evolution of state policy by state tribunals.  Therefore, federal courts are not an appropriate forum for pronouncing a state's public policy where the state constitution, statutes or judicial opinions give no clear indication that such policy is well defined and dominant.

S. Solvents, Inc. v. N.H. Ins. Co., 91 F.3d 102, 105 n.1 (11th Cir. 1996) (internal quotations, bracketing in original, and citations omitted).

    [7]  RSE concedes that the release agreement does not implicate Count I of UCDP's complaint to the extent that the count seeks declarations that the '221 Patent is invalid or, alternatively, that UCDP's rides did not infringe the '221 Patent.

Copies furnished to:

Counsel of Record

Unrepresented Party